■ I. J. S. Fabrics, Inc., Respondent, v Dan River, Inc., Appellant. — Order and judgment (one paper) Supreme Court, New York County, entered June 11, 1980, granting the petition to stay arbitration permanently, reversed, on the law, and petition dismissed, without costs. Respondent Dan River, Inc. (River), demanded arbitration because of the failure of petitioner I. J. S. Fabrics, Inc. (Fabrics), to accept and pay for 400,000 yards of polyester fabric. On or about February 27, 1976, River mailed a contract to Fabrics. At trial, Fabrics' president, Irwin Sandler, testified that he did not initially sign the contract because it contained a particular warranty clause. Sandler further testified that on or about March 11, 1976, he had a telephone conversation with River's salesman, Jerry Connolly. Sandler conceded that, in that conversation, Connolly permitted him to delete the offensive warranty. On March 11, 1976, Sandler signed and returned the contract to River. Suffice it to say that the contract contained a broad arbitration clause. In signing the contract with the one deletion, Sandler accepted the terms of River's offer. In fact, he

conceded at trial that he believed there was a binding contract with the one deletion. Thus, Fabrics became bound by all the terms of that original contract including the arbitration clause. Therefore, any dispute as to whether the original contract was subsequently breached, modified or abandoned should be settled at arbitration. *(Matter of Riccardi [Modern Silver Linen Supply Co.], 36 NY2d 945; Matter of Black & Pola [Manes Organization], 72 AD2d 514, affd 50 NY2d 821.)* Concur — Murphy, P.J., Kupferman, Birns and Carro, JJ.

Bloom, J., dissents in a memorandum as follows: I.J.S. Fabrics, Inc., is a converter of fabrics. It purchases goods in the greige state and converts them into the finished product. Dan River, Inc., is a purveyor of greige goods. On February 27, 1976, Irwin Sandler, president of I.J.S., and Jerome Connolly, a salesman for Dan River, negotiated for the purchase and sale of 400,000 yards of griege goods. Apparently, the quantity and price were agreed upon. Subsequently Sandler received Sales Note No. 8276 from Dan River which, in the printed portion thereof, specified: "There are no warranties which extend beyond the description on the face hereof". A further clause of the sales note specifically enumerated that Dan River disclaimed responsibility for "yarn induced conditions, including, but not limited to knots, warp streaks, light or puckered ends". Upon receipt of the sales note Sandler called Connolly, who immediately came to his office. Sandler informed Connolly that he "objected to the clause in the contract where it gave them [Dan River] no responsibility to [sic] the goods". Connolly thereupon telephoned his superior from the premises of I.J.S. Following that conversation Connolly told Sandler to delete the clause from the sales note, to initia ...ie deletion, sign the sales note and that it would thereupon constitute a binding contract. On March 11, 1976, Sandler followed Connolly's instructions and signed and returned the sales note. Some few days thereafter, Sandler received a letter dated March 12, 1976 from Robert Griffin, the merchandise manager for Dan River, seeking reinstatement in the sales note of the substance of the "no warranty" clauses. Although couched in other language it purported to decline responsibility by Dan River for the condition of the merchandise involved save under certain sharply limited conditions. On March 17, 1976, Sandler responded by letter in the following terms: "We received your letter of March 12th, 1976, the change in the clause is not satisfactory to us. Because it is very much like the original clause we rejected. If you cannot use the goods without clause, then it seems like we cannot do any business with each other". On March 9, Dan River forwarded a form letter, the opening lines of which read as follows: "Our records indicate that we have not as yet received from you, signed acknowledgement of the following contracts: Mill Serial No. Haynsworth Plant 8276 Date 2/27/76". On April 30, 1976, a similar form letter was sent, only this time the sales note number referred to was 8336 and the date referred to was March 31, 1976. This letter contained a description of the goods allegedly ordered, the price, the shipping dates and a request for the signature of I.J.S.'s authorized representative. The changed date of the sales note in the body of the letter was occasioned by the substitution of Sales Note No. 8336 for 8276. Neither letter was ever signed by I.J.S. The goods in question were never shipped, either on the shipping dates specified or at any other time, nor were any shipping instructions ever requested. Subsequently, the price of greige goods declined sharply, as a result of which Dan River made demand for arbitration, pursuant to the broad arbitration clause contained in the sales notes, seeking damages for breach of the claimed agreement. I.J.S. moved to stay arbitration asserting that it had not entered into the agreement in question. Dan River countered by asserting that it never received Sandler's letter of March 17 and with the contention that I.J.S. by deleting the "no

warranty" clauses and signing the sales note, had contracted with it for the purchase of 400,000 yards of greige goods at a specified price and that Griffin's letter of March 12 merely represented a request for modification of that contract. Special Term held that whether or not I.J.S. was bound by the arbitration clause depended on whether the sales note signed by Sandler constituted a contract between the parties. This, in turn, hinged on whether I.J.S. had mailed and Dan River had received Sandler's letter of March 17 in which he had noted that absent the "no warranty" clauses, the parties could not do business with each other. Since this issue could not be determined on the papers, he referred it for an evidentiary hearing. The hearing court, after taking the testimony of the interested parties concluded that Sandler's March 17 letter had been mailed by I.J.S. and had been received by Dan River. However, it went beyond that limited finding and found that Dan River had never accepted the modification of the sales note by I.J.S. and, by consequence, no contract was entered into by the parties. I am of the opinion that both Special Term and the hearing court were correct and that the judgment staying arbitration should be affirmed. There is no dispute but that the sales note contained an arbitration clause and that both petitioner and respondent assented thereto. However, an arbitration agreement in the air, so to speak, is scarcely sufficient in and of itself. In order to be effective it must be attached to a dispute which is arbitral. Here there can be such a dispute only if there was a contract between the parties which had been breached by one of them. Thus, the threshold question was a factual one. In the circumstances here presented, whether the parties had agreed or whether they were still in the process of negotiation, looking to an agreement, could not be resolved on the papers. An evidentiary hearing was required. Although Special Term may have limited the issue too sharply, it ordered that hearing. The hearing court, based on the evidence presented to it, concluded that no agreement had yet been reached. With its finding, which cannot be said to be against the weight of the evidence, the purported agreement fell. Accordingly, the arbitration clause, which was part of the purported agreement, also fell. The judgment staying arbitration was, therefore, proper.